LEAVE TO FILE GRANTED.
March 29, 2024



David C. Johnston

Judge Beryl Howell
U.S. District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, DC 20001

Re: Enclosed Petition to Terminate Probation; Case Number: 1:22-cr-00182-BAH

March 21, 2024

Dear Judge Howell,

Hope this letter finds you well.

I am writing to request that you grant my Motion for Early Termination of Probation. Please see my pro se motion attached.

For my role in the sad and troubling events of January 6, 2021, I apologized to the court during my sentencing and do so again now. Your Honor, if I had it to do over again, I would turn around and leave the area without hesitation. I apologize for contributing with my presence to the violence that occurred that day. I do not want to over-state this. In your work you hear defendants wax on with apologies all the time. I simply want to let you know that I know I made a dreadful mistake, I learned from it, and it is not something I will ever repeat. I have attached a separate letter of apology to my motion as Exhibit A.

Your Honor, I have completed the conditions of serving 21 days of incarceration (a 14-day period followed by a 7-day period), 90 days of home confinement, and payment in full of fine, restitution and special assessment. At present, approximately 15 months of my 36 months of probation is complete. I have done my best to cooperate fully with my probation officer.

I am sure you know that probation itself is the least burdensome part of my sentence. The reason I am requesting that you grant my petition is that, upon information and belief, the South Carolina Bar may be willing to lift the interim suspension of my law license if the probation ends. I cannot state this with certainty, but I have spoken to two accomplished South Carolina licensure attorneys who believe the Bar will be more inclined to lift the suspension of my law license if the probation is ended.

I currently work in the field of affordable housing utilizing Section 82 of the Tax Code creating the Low-Income-Housing-Tax-Credit (LIHTC). It is meaningful work that makes a tremendous contribution to our country. With the suspension of my law license lifted, I could branch into other areas of LIHTC. As you may recall, the law firm for which I worked fired me when I was arrested. I consented to a petition for the interim suspension of my law license filed by the SC Office of Disciplinary Counsel. I entered the field of affordable housing because I needed a job. But now in the industry, I like it. In fact, everyone likes it! LIHTC is the one of the most bipartisan pieces of legislation in history. It is complex and engaging. It directly impacts the problem of homelessness, housing shortages, and housing affordability. LIHTC has created a vibrant area of construction and development. I could do much more in LIHTC as a licensed attorney.

If Your Honor is concerned that off probation, I will participate in some other event like January 6th, please allow me to assure you that I will not. When Trump held a rally in my hometown of Summerville, South Carolina, a few miles from my house, on September 25, 2023, I did not attend. When he held a rally on February 10, of this year, at nearby Coastal Carolina University, I did not attend. No more rallies for me.

Your Honor, as a matter of public policy, there has to be forgiveness and grace in matters like this or our country is going to tear apart.

Please grant my Motion for Early Termination of Probation. In that motion I have formally waived hearing, but if Your Honor would be more comfortable seeing me face to face, please set the hearing and I will appear in your courtroom.

Thank you for your kind consideration of this matter.

Sincerely,

David C. Johnston

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Criminal No.: 1:22-cr-00182-BAH |
| ) | |
| DAVID CHARLES JOHNSTON, ) | |
| ) | **MOTION FOR EARLY TERMINATION** |
| ) | **OF PROBATION** |
| Defendant. ) | |
| ) | |

The Defendant, David Charles Johnston, (referred to herein as "Mr. Johnston"), acting as a pro se defendant (writing in the third person in this motion), files this Motion For Early Termination of Probation and respectfully requests that this Honorable Court grant this Motion. As grounds therefore, Mr. Johnston offers this honorable court following:

## OVERVIEW

May it please this honorable Court, the single charge to which defendant pled guilty is a misdemeanor, specifically Title 40 of the United States Code, §§ 5104(e)(2)(g) Picketing, Parading or Demonstrating in any of the Capitol Buildings. However, to show the Court that Mr. Johnston understands the underlying charge does not reflect the seriousness of the riots and other wrongful occurrences of January 6, 2021, or Mr. Johnston's dismal judgment in participating in them, Mr. Johnston outlines and uses the factors provided for defendants charged with a felony in respectfully putting forward this motion.

Mr. Johnston has been on probation since his date of sentencing, December 16, 2022. Mr. Johnston has satisfied all conditions of his probation except for the passage of three (3) years. This honorable Court ordered three conditions of probation. Those conditions were: twenty-one (21) days of incarceration served in a period of fourteen (14) days followed by a period of seven (7)

Page 1 of 14

days, ninety (90) days of home confinement, and fines plus restitution totaling $3,010.00.

Mr. Johnston served the two periods of incarceration at FDC Miami. He served the 14-day period from July 28, 2023, to August 10, 2023, and the 7-day period of incarceration from October 12, 2023, to October 18, 2023. Mr. Johnston served the home-confinement from December 20, 2022, to March 19, 2023. Mr. Johnston paid the fines and restitution in full on or about January, 2023. Mr. Johnston has served all the conditions of probation and has now served over one (1) year of his total of three (3) years of probation.

The Federal Bureau of Prisons designated Mr. Johnston to serve both periods of incarceration ordered by this court at FDC Miami, a low security federal prison. During his first period of incarceration, FDC Miami housed Mr. Johnston on the sixth-floor, a trustee floor. Mr. Johnston fully cooperated with corrections officers and caused no problems or issues. During the second period of incarceration, Mr. Johnston was "un-designated" with about 5 days to go on his sentence. The undesignated status caused him to be transferred to the 10th floor, a holding floor which was more dangerous than the trustee floor.

### Arrest and Subsequent Fallout

Agents of the FBI and local law enforcement, approximately 15 officers in approximately 10 vehicles, arrested Mr. Johnston when he was on his way to work on the morning of Friday, May 20, 2022. The arrest was Mr. Johnston's first contact with the FBI. The arrest was conducted in a highly public manner. At that time, Mr. Johnston was a member in good standing of the South Carolina Bar. He had been employed by the same law firm for approximately 10 years. The news story appeared online within 2-3 hours of the arrest. Mr. Johnston's law firm of 10 years fired him as soon as the story appeared online. The story also appeared on the front page of the local newspapers of Charleston and Columbia, SC on the following morning, Saturday, May 21, 2022,

and on three subsequent occasions.

Mr. Johnston self-reported his arrest to the Office of Disciplinary Counsel of the State Bar on Monday, May 23, 2022. The Office of Disciplinary Counsel petitioned the Bar to place Mr. Johnston's law-license on interim suspension on approximately May 25, 2022. Mr. Johnston consented to the suspension of his law license on that same day. His law license remains on interim suspension at this time. *Your honor, please note that upon information and belief, the South Carolina Bar will not look favorably on lifting the interim suspension of Mr. Johnston's law license and letting him return to work while he remains on probation.*

Despite the difficult circumstances in the aftermath of his arrest, Mr. Johnston found and has maintained full-time employment since approximately June 1, 2022, less than two weeks after the arrest. Mr. Johnston works at Carolina Indemnity Group in Charleston, placing surety bonds for affordable housing developers utilizing the Low-Income Housing Tax Credit Program outlined in Section 42 of the IRC. His work directly helps with the important work of creating affordable housing in the US. Mr. Johnston could (and would like to) do more if the interim suspension was lifted from his law license.

Mr. Johnston is a dedicated husband and father of four. He is highly active in his children's lives. He is an ordained deacon and Chairman of the Diaconate at his church. The Diaconate of Mr. Johnston's denomination is the arm of church leadership that assists church members and people in the community with physical and monetary needs.

Mr. Johnston waives hearing on this motion. However, if the Court deems that justice is better served by Mr. Johnston appearing before this honorable Court, Mr. Johnston will travel to Washington, DC, and appear on a date and time of the court's choosing.

## SUGGESTIONS IN SUPPORT

1.  Because of his participation in the riot and other egregious events at the US Capitol on January 6, 2021, agents of the FBI arrested Mr. Johnston on May 20, 2022, and charged him with four violations of federal law:

    - Entering or Remaining in a Restricted Building or Grounds, a violation of Title 18, United States Code, §§ 1752(a)(1).

    - Disorderly and Disruptive Conduct in a Restricted Building or Grounds, a violation of Title 18, United States Code, §§ 1752(a)(2).

    - Disorderly Conduct on Capitol Grounds, a violation of Title 40, United States Code, §§ 5104(e)(2)(d).

    - Parade, Demonstrate or Picket in any of the Capitol Buildings, a violation of Title 40, United States Code, §§ 5104(e)(2)(g).

2.  On the day he was arrested, US Magistrate Judge Robin Meriweather of the Federal Magistrate Court in Charleston, South Carolina, released Mr. Johnston on a reconnaissance bond with standard conditions. Mr. Johnston thoroughly complied with all conditions of his release on bond.

3.  On September 23, 2022, Mr. Johnston appeared before this honorable Court by internet videoconferencing, and, by agreement with the DOJ, entered a plea of guilty to Picketing, Parading or Demonstrating at the Capitol, a violation of Title 40, United States Code, §§ 5104(e)(2)(g). The other charges were dismissed.

4.  On December 16, 2022, Mr. Johnston appeared in person before this honorable Court

in Washington, DC, to be sentenced upon his guilty plea. That sentence was thirty-six (36) months of probation with certain standard and special conditions. Those conditions included:

- That Mr. Johnston serve (21) days of incarceration in two periods, one of fourteen (14) days followed by one period of seven (7) days,

- That Mr. Johnston serve ninety (90) days of home confinement with location monitoring,

- That Mr. Johnston pay a fine of $2,500.00, restitution of $500.00, and the special assessment of $10.00.

5. On or about January, 2022, Mr. Johnston paid all his above-mentioned monetary penalties and restitution in full.

6. On or about December 20, 2022, the Federal Probation office in Charleston, SC placed a GPS ankle-monitor on Mr. Johnston's person for location-monitoring of his 90-day home-confinement. Mr. Johnston fully complied with all conditions of his home-confinement completing the 90 days on March 19, 2023.

7. On or about March 19, 2023, The Federal Bureau of Prisons designated Mr. Johnston to serve his two periods of incarceration at FDC Miami, a low security prison. Mr. Johnston traveled to Miami, Florida, and voluntarily surrendered on time for each of the two incarcerations. The Federal Bureau of Prisons scheduled the 14-day incarceration at FDC Miami to run from July 28, 2023 to August 10, 2023, and the 7-day incarceration to run from October 12, 2023 to October 18, 2023. Mr. Johnston served both incarcerations in full and without issues or problems.

8. Mr. Johnston had been a practicing attorney and member of the SC Bar in good

Page 5 of 14

standing for approximately 10 years on the day of his arrest on May 20, 2022. Mr. Johnston worked at the same law firm for 10 years prior to his arrest. On the morning of his arrest, his law firm terminated him as soon as the local news media published the story online.

9.     Mr. Johnston self-reported his arrest to the South Carolina Bar on or about Monday, May 23, 2022. On or about Wednesday, May 25, 2022, the South Carolina Office of Disciplinary Counsel (ODC) filed a petition asking the Bar to interim-suspend Mr. Johnston's law license. On or about that same day, Mr. Johnston filed a pro se response and consented to the interim suspension requested by the ODC. Mr. Johnston's law license remains on interim suspension at the present time.

10.    Upon information and belief, the South Carolina Bar will not look favorably on lifting the suspension of his law license while Mr. Johnston remains on probation. This belief is based on the legal opinions of two South Carolina attorneys who practice in the area of attorney licensing.

11.    Approximately two weeks after his arrest and job-termination, on or about June 1, 2022, Mr. Johnston secured full-time employment with Carolina Indemnity Group where he consults affordable housing developers on obtaining surety bonds required for affordable housing developers who build affordable housing pursuant to the Low-Income Housing Tax Credit Act of 1986. Mr. Johnston has been continuously and successfully full-time employed since that time and he remains employed at the present time.

12.    Mr. Johnston was supervised while on recognizance bond and probation by the same U.S. Probation Officer, Amberelle Wells. Officer Wells is located in the J. Waties Waring Judicial Center, 83 Meeting Street, 1st Floor, Charleston, SC 29401, PO Box 894, Charleston, SC

29402, 843-579-1537, amberelle_wells@scp.uscourts.gov. As of March, 2024, Mr. Johnston is now supervised by Officer Christian Chamberlain located in the same building, 843-598-6345, christian_chamberlain@scp.uscourts.gov.

13. Mr. Johnston resides with his wife and children at his home in Summerville, South Carolina where he has resided continuously since 2007. His residence and employment are stable.

14. Mr. Johnston is an active member of his church where he serves as Chairman of the Diaconate, the church-office within his denomination that is responsible for seeing to the physical needs of church members and people in the community who are in need. The work of the Diaconate often involves helping people with financial support, home repairs, meals during periods of infirmity, and other physical needs. Prior to his law license being placed on interim suspension, Mr. Johnston provided pro bono legal services to church members and needy people in the community pursuant to his work as an ordained deacon.

15. Mr. Johnston has served over fifteen (15) months of his thirty-six (36) month probation. He has completed all conditions of the probation except for the passage of thirty-six months.

16. Mr. Johnston fully cooperated with the government at all times, answering all questions and providing, to the best of his ability, any information the government requested of him.

17. Mr. Johnston has had no problems, issues or encounters with law enforcement other than traffic stops which he timely reported to his Probation Officer and one incident of traveling to work on a Saturday during home-confinement because he misunderstood the terms of the home-confinement work days.

18. Mr. Johnston has written a letter to this Honorable Court that is attached to this Motion as Exhibit A, expressing his remorse for his transgressions. Mr. Johnston intends to never

again participate in political protests or rallies.

        19.     Concerning early termination of probation, The Judicial Conference states: Officers should consider the suitability of early termination for offenders as soon as they are statutorily eligible. The general criteria for assessing whether a statutorily eligible offender should be recommended to the court as an appropriate candidate for early termination are as follows:

> 1. Stable community reintegration (e.g., residence, family, employment);
>
> 2. Progressive strides toward supervision objectives and compliance with all conditions of supervision;
>
> 3. No aggravated role in the offense of conviction, particularly large drug or fraud offenses;
>
> 4. No history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence);
>
> 5. No recent arrests or convictions (including unresolved pending charges), or ongoing, uninterrupted patterns of criminal conduct;
>
> 6. No recent evidence of alcohol or drug abuse;
>
> 7. No recent psychiatric episodes;
>
> 8. No identifiable risk to the safety of any identifiable victim; and
>
> 9. No identifiable risk to public safety based on the Risk Prediction Index (RPI).

Guide to Judiciary Policy, Vol. 8E, Ch. 3 § 380.10(b), "Early Termination" (Monograph 109) (rev'd 2010) (emphasis added).

20.    Looking at Factor 1 above, Mr. Johnston reintegrated into the community remarkably quickly, taking on new employment in an entirely new field while continuously providing for his wife and

their four children.

21. Looking at Factor 2 above, Mr. Johnston has cooperated fully with all terms and conditions of his probation and completed all the conditions set by this honorable court.

22. Looking at Factor 3 above, Mr. Johnston did not engage in any actions that would be aggravating during the course of his wrongful entry into the Capitol on January 6, in that there were no allegations that he engaged in any form of violence or possessed or used any sort of weapon. Mr. Johnston did not commit any act of vandalism or theft. The government argued at sentencing that the fact that Mr. Johnston is a lawyer was an aggravating factor and Mr. Johnston accepts this assertion. But his being a lawyer was not a volitional act during the riots of January 6, but a fixed status when his misbehavior occurred.

23. Looking at the balance of factors listed above, Mr. Johnston has no history of violence, no recent arrests, or convictions (other than two paid traffic fines), no history of substance abuse or psychiatric problems, and he is not any sort of risk to any victims of the events of January 6 or to the public in general.

24. In determining whether early termination of probation is appropriate, 18 U.S.C. §3564(c) states: "Early Termination.— The court, after considering the factors set forth in section 3553(a) to the extent that they are applicable, may, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, terminate a term of probation previously ordered and discharge the defendant at any time in the case of a misdemeanor or an infraction or at any time after the expiration of one year of probation in the case of a felony, if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice.

25. While there is no set period for a misdemeanor charge, Mr. Johnston has waited the time-period set for a felony charge, to reflect that he understands the seriousness of the charge from the perspective of the totality of the circumstances. The period of probation has reached one-year in

Page **9** of **14**

duration as of December 16, 2023.

## Listing and Addressing the Statutory Factors by Section Number

26.   § 3553(a)(1) the nature and circumstances of the offense and the history and circumstances of the defendant.

- Mr. Johnston fully appreciates that the riots at the US Capitol that occurred on January 6, 2021, were particularly egregious precisely because they occurred at the US Capitol, a building about which the historic and symbolic significance cannot be overstated, and because they occurred at a particularly critical moment in any democracy, the proceeding to certify a national election to assure the orderly transition of power. Mr. Johnston knows and acknowledges that he never should have stepped into the Capitol building particularly at that time but also at any other time. He deeply regrets his mistake. He has paid a high price for his mistake. It is also true that the mistake he made, as appalling as it was, was out of character for this person with a clean record, otherwise leading an exemplary life in many ways, faithful husband, dedicated father, community helper, skilled attorney dedicated to his church and community.

27.   §3553(a)(2)(A) the need for the sentence imposed – to reflect the seriousness of the offense and to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant…

- The sentence of 21 days of intermittent incarceration, 90 days of home confinement, fines and probation was sufficiently severe to reflect the seriousness of Mr. Johnston's wrong-doing on January 6. The media in Mr. Johnston's home state of South Carolina informed the public as well as members of the state bar that Mr. Johnston was an

Page **10** of **14**

attorney, that his license was suspended, and that he served time in both prison and home confinement for his offense. The Charleston Post and Courier and The Columbia State named Mr. Johnston on the front page of the paper on four separate occasions. There were numerous stories on local television and posted online. The punishment contained within the conditions of probation and the passage of a full year of probation adequately promotes respect for the law and provides just punishment. A continuation of probation for two more years with no other conditions outstanding will not significantly affect the public's perception of the level of punishment in this case and will only serve to limit Mr. Johnston's employment contribution as he rebuilds his life.

28. §3553(a)(2)(D), (3), (4) (5) concern sentencing guidelines and do not apply to Mr. Johnston's case as sentencing guidelines do not apply in misdemeanor cases.

29. §3553(a)(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

- Upon information and belief, a probation period of one year would not be grossly out of line with the duration of probation sentenced to other January 6 defendants.

30. §3553(a)(7) the need to provide restitution to any victims of the offense.

- Mr. Johnston paid the court ordered restitution of $500.00 as part of the conditions of his probation.

31. Mr. Johnston respectfully requests that this Honorable Court consider and grant early termination of his probation based on the fact that he has paid his financial obligations in full, served his incarceration and home confinement, and has remained gainfully employed. Mr. Johnston would like to have his law license re-instated to enhance his work in affordable housing and as a deacon in his church. Having his law license reinstated would greatly expand what Mr. Johnston could contribute in the domain of affordable housing and allow him to continue his pro-bono legal work

in his church and community. Mr. Johnston respectfully requests that this honorable court agree with him that he is an adequate candidate for early termination of probation.

32. Mr. Johnston will send a copy of this Motion along to Assistant United States Attorney, Ashley Akers, regarding this request for early termination of probation. It is assumed that AUSA Akers will not consent to early termination of Mr. Johnston's probation at this time, but that this is ultimately a matter for the Court to decide.

33. Mr. Johnston satisfies all the factors set forth for early termination. He has completed all his terms of supervision and has no need for programming or treatment. He paid his financial obligations in full.

34. Mr. Johnston has completed every condition asked of him and fully reintegrated into society and is a valued worker, family member, and citizen. He has achieved stable community reintegration in terms of housing, family, and employment. Mr. Johsnton is in full compliance with all terms of probation. Mr. Johnston had no violence or weapons in this offense.

35. Mr. Johnston voluntarily took a drug screening test on the day of his arrest and has taken many more during his bond supervision and probation – all of which were negative for any intoxicating substances. He does not use drugs, alcohol to excess, or controlled substances in any form. He has no psychiatric issues. Mr. Johnston enjoys the support of his community and repeatedly has high reviews from people doing the important work of producing affordable housing. Mr. Johnston is a good candidate for early termination of supervised release based on every factor set forth herein.

36. Federal Rule of Criminal Procedure 32.1 entitled, "Revoking or Modifying Probation or Supervised Release" states in pertinent part,

> (c)(1) Before modifying the conditions of probation..., the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation. (2)(A) A hearing is not required if the person waives the hearing; or (B) the relief sought is favorable to the person and does

>not extend the term of probation... (C) an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so.

37. Mr. Johnston waives his right to a hearing in this matter and respectfully requests that the Court grant his motion without the necessity of a hearing. However, if this honorable Court deems that a hearing best serves the interests of justice, Mr. Johnston will travel to Washington, DC and appear in person at the court's direction.

WHEREFORE, defendant Johnston respectfully requests that this Honorable Court grant his motion to terminate his term of probation as a date specified by this honorable court.

Respectfully submitted,

/s/
David C. Johnston,
Pro Se Defendant
dc@cigbonds.com

Charleston, South Carolina
Thrusday, March 21, 2024

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the _____ day of _____, 2024, the foregoing was electronically filed with the Clerk of the Court using the email address provided and he has copied all counsel of record.

/s/ 
David C. Johnston
*Pro Se Defendant*