**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-CR-182 (BAH)** |
| | : | |
| **DAVID JOHNSTON,** | : | |
| | : | |
| **Defendant.** | : | |

**OPPOSITION TO DEFENDANT'S MOTION
FOR EARLY TERMINATION OF PROBATION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this motion in opposition to defendant David Johnston's Motion for Early Termination of Probation, ECF No. 60. As explained below, early termination of the defendant's probation is not merited here and is not supported by the 18 U.S.C. § 3553(a) factors. Of most salience, the requested early termination of probation would create unwarranted sentencing disparities among similarly situated defendants and would result in a sentence that does not account for the extremely serious nature of the offense: disrupting the peaceful transfer of power on January 6. Accordingly, the government submits that the Motion should be denied.

I.     **Background**

The defendant was arrested on May 16, 2022 based on a Complaint alleging violations of 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G) arising from the defendant's participation in the riot at the U.S. Capitol Building on January 6, 2021. *See* ECF No. 1 (Complaint); ECF No. 5 (Arrest Warrant). The defendant pled guilty to Parading, Demonstrating, or Picketing in a Capitol Building, in violation of § 5104(e)(2)(G), pursuant to a plea agreement. ECF No. 25; Minute Entry (9/23/2023).  The Court sentenced the defendant to 36 months of

1

probation and, as special conditions of probation, 21 days of intermittent incarceration and 90 days of home detention; a $2,500 fine; $500 in restitution; and a $10 special assessment. ECF No. 47 (Judgment). To date, the defendant has paid the fine, restitution, and special assessment and has served approximately 15 months of his 36-month term of probation, including serving his periods of incarceration and home detention. ECF No. 60 at 1.

## II.    Argument

### A.  Early Termination Standard

Pursuant to 18 U.S.C. § 3564(c), a court has discretion to terminate a term of probation imposed in a misdemeanor case at any time "if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c). In making this determination, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. *Id.*; *see also United States v. Hartley*, 34 F.4th 919, 928-929 (10th Cir. 2022) (holding that a district court must make individualized determinations based on the applicable statutory criteria before responding to a request to modify a sentence); *cf. United States v. Ferrell*, 234 F. Supp. 3d 61, 63 (D.D.C. 2017) (same holding for considering early termination of probation in felony case). And although "extraordinary circumstances . . . are not necessary for such termination," they "may be sufficient to justify early termination of a term of supervised release." *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020).

Courts have routinely held that mere compliance with the conditions of probation without more does not warrant early termination. *See, e.g.*, *United States v. Suarez*, 21-cr-205 (DLF), 11/9/23 Minute Entry ("As courts in this district have previously held, 'good behavior alone' is generally 'insufficient to warrant early termination' of probation.") (citing *United States v. Parker*, 219 F. Supp. 3d 183, 191 (D.D.C. 2016)); *United States v. Salazar*, 693 F. App'x 565, 566 (9th Cir. 2017) (affirming denial of motion to modify conditions of probation where "the magistrate

judge applied the correct legal standard when she considered the 18 U.S.C. § 3553(a) factors and determined that Salazar's mere compliance with the conditions of probation, without more, did not warrant early termination"); *United States v. Acosta-Triana*, No. CR 01-0817 (ES), 2017 WL 4786559, at *2 (D.N.J. Oct. 23, 2017) (finding general compliance with probation terms "insufficient to terminate probation"); *United States v. Rusin*, 105 F. Supp. 3d 291, 292 (S.D.N.Y. 2015) (stating that full compliance with probation conditions is what is expected of defendants and "[e]arly termination is not warranted where a defendant did nothing more than that which he was required to do by law.").

Additionally, courts have denied defendants' requests for early termination of probation based on the justification that it is difficult to find employment of their choosing while on probation. *E.g.*, *United States v. Reda*, Case No. 6:22-cr-00062-RBD-LHP, ECF No. 9 at 2 (M.D. FL. May 22, 2023) (denying January 6 defendant's motion for early termination arguing that the defendant cannot gain a position in any public school district as a teacher while on probation, and holding that granting such a motion "would be contrary to the statutory purposes for sentencing, which are to promote respect for the law and to serve as a general deterrent" and "would result in an unwarranted disparity not justified by the circumstances"); *see also id.* at ECF No. 14 (denying motion for reconsideration).

Two published cases in this district provide useful guidance. In *United States v. Longerbeam*, 199 F. Supp. 3d 1 (D.D.C. 2016), the court explained that in this circuit, either "changed circumstances" or "something of an unusual or extraordinary nature in addition to full compliance" is needed to justify early termination of supervised release because otherwise the exception would "swallow the rule." *Id*. at 2 (citing *United States v. Mathis–Gardner*, 783 F.3d 1286, 1288 (D.C. Cir. 2015), *United States v. Lussier*, 104 F.3d 32, 32 (2d Cir. 1997) and *United*

*States v. Etheridge*, 999 F.Supp.2d 192 (D.D.C. 2013)). And in *United States v. Mathis–Gardner*, 110 F. Supp. 3d 91 (D.D.C. 2015), the court explained that, in spite of the defendant's argument that she had taken dramatic steps to give back to her community since her release from prison, early termination was not in the interest of justice based on the need for supervised release to serve as punishment and a general deterrent. *Mathis–Gardner*, 110 F. Supp. 3d at 93-94.

Similarly, Judge Friedrich recently denied a January 6 defendant's request for early termination of probation in *United States v. Saurez*. *See Suarez*, 11/9/23 Minute Entry. There, as here, the defendant had pled guilty to a single count of Parading, Picketing, or Demonstrating in the Capitol Building under 40 U.S.C. § 5104(e)(2)(G). The defendant sought early termination of probation after completing her community service, which the court recognized and commended: "The Court is pleased to see that the defendant has completed her community service, fully complied with the terms of her probation, engaged in productive mental health therapy, and opened a new business." *Id.* Yet the court denied the defendant's request, because "the defendant's offense—participation in the January 6 riot—was exceptionally serious; in view of the nature of the defendant's offense, early termination would not promote respect for the law, provide just punishment, or afford adequate general deterrence." *See id.*

### B. The Defendant Has Not Demonstrated New or Unforeseen Circumstances that Warrant Early Termination of Probation

The defendant's motion fails to raise any new or unforeseen circumstances that warrant early termination of his 36-month term of probation. The defendant offers that, since his conviction, he has complied with conditions of his probation and has had no further encounters with law enforcement. Mot. at 7-9. The defendant contends that early termination is warranted because he has paid his financial obligations in full, served his incarceration and home confinement periods, and has remained gainfully employed. Mot. at 1, 11. The defendant offers that he would

4

like to have his law license re-instated to enhance his work, and he believes that the South Carolina Bar is more likely to lift the suspension of his law license if his probation is terminated. *Id.* at 3, 11.

As an initial matter, the defendant's completion of certain conditions of his probation (incarceration and home detention)—which were mandated to be completed within the first year of probation—and his payment of financial obligations imposed as part of his sentence are insufficient bases to justify termination of his probation.  As courts have routinely recognized, "full compliance with the terms of probation is an expectation, not an aspiration," and it is not alone grounds for early termination of probation. *United States v. Reda*, Case No. 6:22-cr-00062-RBD-LHP, ECF No. 14 at 2 (M.D. FL. May 22, 2023)  (rejecting January 6 defendant's motion for early termination and noting that the "Defendant received a very lenient sentence of just three years' probation—without incarceration—for a very serious crime, of which he has now served only twenty months"). Additionally, the defendant's reliance on his life and job stability post-sentencing—though commendable—is similarly insufficient to warrant early termination. Neither prevented the defendant from carrying through on his desire to enter the United States Capitol during the Electoral College certification on January 6, 2021, and the full term of probation is necessary to ensure that the defendant continues to refrain from engaging in criminal activity.

Next, the defendant has not raised any new or unforeseen circumstances that warrant early termination of his 36-month term of probation. Rather, the defendant explains that he is successfully employed in the field of affordable housing, but he would be able to "do much more" if he were a licensed attorney. *Id.* at 2. These circumstances are basically unchanged from the time of his sentencing. By that time, the defendant had lost his job at a law firm due to his criminal

activity and his law license had been suspended. Those circumstances were taken into consideration in the government's sentencing recommendation and the Court's sentence.

In fact, as the government argued in its sentencing memorandum and at sentencing, the defendant's status as a practicing attorney on January 6 is a particularly aggravating feature of his case. *See* ECF No. 40 at 22. Unlike other professionals, attorneys are rigorously taught about the importance of adhering to the rule of law. In their professional work and continuing education, they are frequently reminded that the rule of law is an essential component of a free and orderly society. That the defendant was a practicing attorney on January 6, and still choose to engage in the actions that he did, weighs strongly against his motion for early termination, not in favor. And although the defendant asserts that he would be able to contribute better in his employment with a law license, the potential for a better job opportunity is similarly insufficient for early termination of probation. In *United States v. Reda*, for example, the defendant filed a motion for early termination of probation, contending that, although he was able to obtain a position as a teacher at a private school in Florida, the fact that he was on probation prevented him from obtaining employment in the public school district. *Reda*, Case No. 6:22-cr-00062-RBD-LHP, ECF No. 5 at 1. The court denied his motion (and motion for reconsideration), and explained that a defendant's employment "hardships, though unfortunate, are self-inflicted. Actions have consequences, as the expected collateral effects of Defendant's criminal activity demonstrate. They are not grounds for modification." *Reda*, Case No. 6:22-cr-00062-RBD-LHP, ECF No. 14 at 2. Here, too.

### C. Early Termination Of The Defendant's Probation Does Not Serve The Interest Of Justice

Looking to the sentencing factors under 18 U.S.C. § 3553(a), early termination of probation here would not serve the interest of justice. As to the nature and circumstances of the offense, § 3553(a)(1), Johnston participated in the January 6, 2021 assault on the United States Capitol,

which delayed the certification of the Electoral College vote. Johnston and his co-defendant watched and videoed physical altercations between law enforcement and rioters on the Capitol's west front during a particularly violent period shortly before rioters broke through the police line; ascended towards the Capitol despite hearing screeching sirens, seeing flash bangs ignite, and hearing a warning system; bragged about breaking past the barriers; and ultimately entered the Capitol building where they remained for about 30 minutes. Once inside, the defendant witnessed more chaos, including rioters hurling themselves and other objects under a rolling bay door to prevent the door from closing. Rather than leave the building, the defendant recorded the chaos on his cell phone. Even after January 6, rather than accept responsibility for his actions, the defendant publicly referred to January 6 prosecutions as "politically charged."

As to other sentencing factors—the history and characteristics of the defendant, § 3553(a)(1); the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); and the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B)—the Court carefully considered these factors in imposing a sentence of 36 months of probation. This request request for a reduction in that period would undercut the Court's balancing of the § 3553(a) factors after hearing from the parties at the sentencing hearing.

Further undermining the interest of justice, granting the defendant's motion for early termination may result in significant sentencing disparities between him and similarly situated January 6 defendants. 18 U.S.C. § 3553(a)(6); *see also United States v. Yung*, No. 91-cr-20049-01-JWL, 1998 WL 422795, at *2 (D. Kan. June 12, 1998) (noting that if the court were to terminate the defendant's supervision early, "it would subvert the underlying policy of the Federal Sentencing Reform Act of 1984 to eliminate sentencing disparity among defendants guilty of

similar offenses" and that the defendant's role in the conspiracy made him "more culpable than other convicted participants").

Before and after the defendant's sentencing, scores of Capitol-breach defendants have been sentenced on this same charge. To aid sentencing courts, the government has developed a table providing additional information about sentences imposed on other defendants.[1] As demonstrated by this table, terminating the defendant's probationary sentence after approximately 15 months would result in significant sentencing disparities with similarly situated defendants, including his co-defendant.

Given the seriousness of the events of January 6, 2021, the functional sentence that the defendant requests here would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense. *See Suarez*, 11/9/23 Minute Entry. These are not run-of-the-mill misdemeanor cases; they are serious offenses that were committed during an unprecedented riot that threatened the peaceful transfer of power. And with the 2024 elections looming, the government is acutely aware of the need to deter future criminal conduct and submits that a term of probation of fifteen months will not adequately deter other would-be offenders from engaging in similar conduct in the future.

### III.    Conclusion

For all of the forgoing reasons, as well as the reasons articulated in the Government's Sentencing Memorandum, ECF No. 43, the government respectfully requests that the Court deny the defendant's Motion for Early Termination of Probation.

---

[1] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Respectfully submitted,

DATED: April 29, 2024                    MATTHEW M. GRAVES
                                         United States Attorney
                                         D.C. Bar No. 481052

                                         By: */s/ Ashley Akers*
                                         ASHLEY AKERS
                                         MO Bar #69601
                                         Trial Attorney
                                         United States Attorney's Office
                                         601 D Street, N.W.
                                         Washington, DC 20530
                                         Phone: (202) 353-0521
                                         Email: Ashley.Akers@usdoj.gov